# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOUA XIONG,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____ | 1:09-cv-0928 SKO<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 10, 11.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1958 and has no formal education or past relevant work. (Administrative Record ("AR") 16, 23.) She speaks Hmong but cannot communicate in English. (AR 16, 24.)

On March 9, 2007, Plaintiff filed an application for SSI, alleging disability beginning on April 1, 2006, due to numbness, headaches, sleeplessness, and back and shoulder pain. (AR 81-88, 95.)

On April 25, 2007, Dr. Damania, an internist, performed a consultative examination of Plaintiff. (AR 154-60.) Before examining Plaintiff, Dr. Damania reviewed all of Plaintiff's available medical records. (AR 154.) Dr. Damania also physically examined Plaintiff. (AR 156-58.) The doctor's diagnostic impressions included chronic daily headaches probably secondary to stress, chronic abdominal pain (possibly peptic ulcer disease), and arthralgias.[2] (AR 158.)

Dr. Damania ultimately opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently (AR 158), i.e., Plaintiff could perform light work. *See* 20 C.F.R. § 416.967(b). Plaintiff could stand and walk for six hours in an eight-hour workday with normal breaks, and could sit for six hours. (AR 158.) Dr. Damania also opined that Plaintiff needed no assistive device for ambulation. (AR 158.) Further, Plaintiff had no postural, manipulative, visual, or communicative impairments. (AR 158-59.)

On April 29, 2007, Ekram Michiel, M.D., a psychiatrist, performed a consultative psychiatric evaluation of Plaintiff. (AR 161-64.) Dr. Michiel observed that Plaintiff was accompanied by her friend and daughter-in-law, with whom Plaintiff laughed and chatted loudly while in the waiting room. (AR 161.) Once Plaintiff entered the waiting room, however, "she stated that she feels sad

---

[2] Arthralgia denotes pain in a joint. *Dorland's Illustrated Medical Dictionary* 152 (31st ed. 2007).

and is in pain." (AR 161.) Dr. Michiel's diagnoses included depressive disorder not otherwise specified ("NOS") and a GAF score of 65.[3] (AR 163.)

Dr. Michiel opined that Plaintiff was able to maintain attention and concentration and to carry out simple instructions. (AR 163.) She was able to relate and interact with coworkers, supervisors, and the general public. (AR 163.) However, Plaintiff was unable to carry out an extensive variety of technical and/or complex instructions. (AR 163.) Plaintiff was further unable to handle her own funds, as she was unfamiliar with United States currency. (AR 163.)

On May 3, 2007, E.A. Fonte, a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 165-69.) The consultant opined that Plaintiff could (1) occasionally lift and/or carry up to 50 pounds and frequently up to 25 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. (AR 166.) In other words, Plaintiff could perform medium work. *See* 20 C.F.R. § 416.967(c). Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AR 166-68.)

On June 12, 2007, Martin Koretzky, Ph.D., a state agency psychologist, completed a psychiatric review technique form pursuant to 20 C.F.R. § 416.920a(e). (AR 174-87.) Dr. Koretzky assessed Plaintiff's functional limitations and opined that Plaintiff's activities of daily living were not restricted. Plaintiff had no difficulties in maintaining social functioning, but had mild difficulties in maintaining concentration, persistence, or pace. Plaintiff did not experience episodes of decompensation. (AR 184.) Plaintiff's depressive disorder was, therefore, not a severe impairment. (AR 174, 177.)

---

[3] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but the individual is "generally functioning pretty well" and "has some meaningful interpersonal relationships." *Id.* at 34.

3

1     From November 2006 through at least September 2008, Virender Kaleka, M.D., treated Plaintiff for complaints of stomach, leg, arm, neck, and knee pain, as well as weakness, headaches, dizziness, and insomnia. (AR 142-53, 192-97, 201-04.) On October 20, 2008, Dr. Kaleka completed a "Physical Capacities Evaluation" form. (AR 199-200.) Dr. Kaleka opined that Plaintiff could (1) sit for four hours in a day; (2) stand and walk for two hours in a day with periodic alternate sitting and standing; (3) frequently lift 20 pounds and occasionally 21-25 pounds but never more than 25 pounds; (4) not use her feet for repetitive movements; and (5) occasionally bend, squat, kneel, and stoop, but not crawl or climb. (AR 199.) Plaintiff was restricted from activities involving hazards such as machinery and heights. (AR 199.)

    The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 32-52, 54-59.) On November 14, 2008, ALJ Christopher Larson held a hearing in which Plaintiff testified through an interpreter that she is married and lives at home with her husband and five children ranging from 4 years old to 18 years old. (AR 22.) All of her children are in school except her youngest child. (AR 22.)

    Plaintiff testified that she cannot work because she is sick and has pain in her shoulder, making it hard to lift her hands over her head. (AR 24.) She has pain in her back radiating to her leg, in her knees and ankles. (AR 24.)

    According to Plaintiff, her hands are painful and numb on the interior, and she has headaches. (AR 25.) The pain is constant, and the medication relieves it a little bit. (AR 25.) Plaintiff also goes to a chiropractor twice a month to help relieve her pain. (AR 26.)

    Plaintiff rests half of the day, approximately four days of the week. (AR 26.) She is able to sit in a chair and can lie down, but cannot stand because it makes her weak. (AR 27.) She has a cane prescribed by Dr. Kaleka to help support her arms and lower back, and which she uses to walk and lean on to relieve the pain in her back and shoulders. (AR 27.)

Plaintiff suffers from headaches constantly, and the medicine helps sometimes. (AR 28.) She has an ulcer, making it difficult to eat. (AR 28.) She has numbness in her hands all the time. (AR 28.) According to Plaintiff, she can lift very little, such as a cup of water. (AR 29.)

Further, Plaintiff takes medication for depression because she is "very sad" and cannot sleep, although she is not suicidal. (AR 29.) Plaintiff does not visit friends or have any interest in things, and she cannot focus on tasks. (AR 29-30.) Her 18-year-old child cooks for her, and she can dress herself with the help of her daughter. (AR 30.)

On December 5, 2008, the ALJ issued a decision finding Plaintiff not disabled since March 9, 2007. (AR 8-17.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of March 9, 2007; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has no past relevant work; and, (5) in light of her RFC to perform the full range of medium work, could perform other jobs in significant numbers in the national economy. (AR 13-17.) Plaintiff sought review of this decision before the Appeals Council. On April 16, 2009, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On May 22, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that, in determining that she retained the RFC to perform the full range of medium work, the ALJ erred in adopting the opinion of the state agency medical consultant and rejecting the opinions of Drs. Kaleka and Damania. Plaintiff further contends that the ALJ erred in rejecting her testimony regarding her subjective complaints of pain.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the

claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    Weighing of Medical Opinions**

The ALJ gave "substantial weight" to the state agency medical consultant's opinion that Plaintiff has the RFC to perform medium work. (AR 15.) Further, the ALJ afforded "limited weight" to the opinion of the consultative examiner Dr. Damania that Plaintiff is restricted to light work. (AR 15.) The ALJ also gave "limited weight to the records" from Dr. Kaleka. (AR 15.) Plaintiff maintains that the ALJ erred in doing so.

**1.    Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not

treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**B.   Analysis**

The state agency medical consultant's opinion contradicted the opinion of the examining physician Dr. Damania and the opinion of the treating physician Dr. Kaleka. The ALJ was, therefore, required to provide specific, legitimate reasons for rejecting the opinions of Drs. Damania and Kaleka.

**1.   Dr. Damania**

The ALJ rejected Dr. Damania's opinion that Plaintiff could perform light work because the opinion "was based upon a one-time exam, and relied upon [Plaintiff's] allegations rather than findings." (AR 15.) The fact that Dr. Damania examined Plaintiff only once is not a specific, legitimate reason for rejecting the doctor's opinion. The ALJ must consider the opinions of examining physicians. *See Lester*, 81 F.3d at 830; 20 C.F.R. § 416.927. By definition, an examining physician does not have an ongoing relationship with a claimant, yet the regulations and case law require consideration and appropriate weighing of examining physicians' opinions. The ALJ's suggestion that Dr. Damania's report is inadequate because it is the result of a one-time examination leads to the conclusion that the opinions of all examining physicians or psychologists should be

discarded, contrary to controlling authority. Therefore, the fact that Dr. Damania's opinion is based on a one-time examination is not a valid reason for rejecting the opinion.

The ALJ further rejected Dr. Damania's opinion because it supposedly relied upon Plaintiff's allegations. (AR 15.) Where medical reports are based solely on a claimant's self-reporting, it may be reasonable for an ALJ who finds the claimant not credible to also question the reliability of the medical reports. *See Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 434 (9th Cir. 1988) (per curiam). In this case, however, there is no evidence that Dr. Damania's assessment of the impact Plaintiff's arthralgias, headaches, and abdominal pain would have on her ability to exert herself was based solely on Plaintiff's own reports. Rather, Dr. Damania's opinion was also based on the doctor's review of Plaintiff's medical records and physical examination. The ALJ's finding that Plaintiff lacked credibility thus provided no reason to question the reliability of Dr. Damania's assessment.[4]

The ALJ did not cite specific, legitimate reasons supported by substantial evidence to justify rejection of Dr. Damania's opinion. As a result, the ALJ erred in rejecting Dr. Damania's opinion.

### 2.   Dr. Kaleka

The ALJ's reason to reject Dr. Kaleka's opinion because the doctor relied on a physician's assistant was also not legitimate. The ALJ gave limited weight to Dr. Kaleka's opinion because, *inter alia*, he "relied on a physician's assistant, who is not 'an acceptable medical source' under Social Security regulations, and whose impressions are entitled to substantial weight." (AR 15.)

Symptoms of the claimant alone cannot establish a physical or mental impairment; rather, there must be evidence from an acceptable medical source. 20 C.F.R. §§ 416.902, 416.913(a). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.* § 416.913(a). Evidence from other sources may be used to show the severity of impairments and the effect on a claimant's ability to work. *Id.* § 416.913(d).

---

[4] Despite Plaintiff's complaints of pain, Dr. Damania's opinion that Plaintiff did not need an assistive device to ambulate and that she had no postural, manipulative, visual, or communicative limitations further belies the ALJ's finding that the doctor's opinion was based on Plaintiff's allegations.

A nurse practitioner or physician's assistant is generally included as an "other" source. *Id.* § 416.913(d)(1). However, a physician's assistant may be considered to be an acceptable medical source where the assistant consults frequently and works closely with a physician and thus acts as an agent of the doctor in the relationship with the patient. In *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996), the court relied on 20 C.F.R. § 416.913 regarding reports of interdisciplinary teams and determined that a nurse practitioner who worked in conjunction with, and under the close supervision of, a physician could be considered an acceptable medical source, but one working on his or her own was not an acceptable medical source.

Here, there is no evidence either that any physician's assistant on whom Dr. Kaleka may have relied worked independently of the doctor or that Dr. Kaleka did not closely supervise the assistant. Therefore, Dr. Kaleka's reliance on a physician's assistant did not disqualify the doctor from being an "acceptable medical source," and the ALJ's reason on this basis for rejecting the doctor's opinion was not legitimate.

### 3. Remand Is Required

The ALJ did not provide specific and legitimate reasons based on substantial evidence in the record to discount the opinions of Drs. Damania and Kaleka. Generally, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing (*quoting Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989))). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Courts retain flexibility, however, in applying this crediting-as-true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato*

*v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good-faith error in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

Here, the ALJ did not neglect to state the reasons for the weight given to the medical opinions in this case. Rather, the ALJ erred because at least some of the stated reasons are legally insufficient. "Such good faith errors inevitably will occur. Reasonable judicial minds sometimes will disagree regarding proper application of the rather imprecise standard of 'specific, legitimate' reasons." *Barbato*, 923 F. Supp. at 1278. "[U]nder the rule in *Lester*, the [medical] opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the opinion fall short of the ill-defined 'specific, legitimate' standard." *Id.* (footnote omitted). "A reviewing court should have discretion to avoid this inequitable result by remanding the case for further administrative proceedings. Remand necessitates delay, but the cost of this delay should be balanced against the risk of an erroneous determination." *Id.*; *see also McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health and Human Services was in better position than court to point to evidence in record to provide specific, legitimate reasons to disregard treating physician's opinion). Accordingly, the Court exercises its discretion to remand this case to the Commissioner for further proceedings. *See McAllister*, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite specific and legitimate reasons for disregarding medical opinions).

Because the Court remands this case for the reasons detailed above, the Court dispenses with an exhaustive analysis of the ALJ's credibility determination. In light of the Court's finding that the ALJ failed to properly evaluate the opinions of Drs. Damania and Kaleka, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 416.929, the ALJ's credibility finding is also reversed and the issue remanded. After re-evaluating the medical evidence of record, the ALJ will be in a better position to evaluate Plaintiff's credibility. The ALJ must do more than make general findings; rather, when evaluating a claimant's credibility,

the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). On remand, the ALJ should properly assess Plaintiff's testimony and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Shoua Xiong and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   September 15, 2010**                    **/s/ Sheila K. Oberto**
                                                                    UNITED STATES MAGISTRATE JUDGE